```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
NORMA LYNCH, LINDA BRISBANE, CYMAH                                 :
LOVELL, KENNETH MILLER, NATISHA                                    :
SMITH, and CHIVON DANIELS,                                         :
                                                                   :
                                         Plaintiffs,               :     16-cv-5677 (KBF)
                                                                   :
               -v-                                                 :     OPINION & ORDER
                                                                   :
THE CITY OF NEW YORK,                                              :
                                                                   :
                                         Defendant.                X
------------------------------------------------------------------
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 27, 2017

KATHERINE B. FORREST, District Judge:

Plaintiffs, on behalf of themselves and others similarly situated, commenced this action on July 15, 2016, against the City of New York for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (ECF No. 1.) Plaintiffs subsequently filed an amended complaint on October 4, 2016. (Am. Compl., ECF No. 21.) Plaintiffs allege that New York City's Department of Homeless Services ("DHS") engaged in a number of illegal employment practices, including, inter alia, failing to compensate plaintiffs at a rate of one and one-half times plaintiffs' regular rate of pay for all hours plaintiffs worked in excess of forty hours in a given workweek. (Id.)

On December 5, 2016, the Court conditionally certified a class under 29 U.S.C. § 216(b) of "all present and former employees who work or who have worked as Principal Administrative Assistant I and Principal Administrative Assistant II

occupations for the City of New York at the Department of Homeless Services facility located at 33 Beaver Street, New York, NY 10004, for any time since July 15, 2013." (ECF No. 34, at 10.)

Both parties filed motions for partial summary judgment; the defendant also moved to decertify the class.[1] (ECF Nos. 72, 76.)

For the reasons set forth below, defendant's motion for class decertification is GRANTED. Further, because decertification impacts the evidence the parties may want to cite in connection with summary judgment, those motions are DENIED with leave to refile.

I.   BACKGROUND

Plaintiffs are thirty current or former Principal Administrative Associates, Level 1 ("PAA 1") or Level 2 ("PAA 2"), who worked for DHS at some point since July 15, 2013. Plaintiffs filed an amended complaint on October 4, 2016, alleging that defendant City of New York engaged in a number of illegal employment practices under the Fair Labor Standards Act ("FLSA"), including: (1) failing to compensate plaintiffs at a rate of one and one-half times plaintiffs' regular rate of pay for all hours plaintiffs worked in excess of forty hours in a given workweek (the "Off-the-Clock Claim"); (2) failing to include certain premium payments such as night shift differential pay and meal allowance payments in the calculation of

---

[1] Courts often refer to this step in FLSA litigation as "decertification." This term is not precise as the first stage of the process is not a true "certification," but rather a "conditional certification" that only allows for the sending of notice to potential class members. See Hernandez v. Merrill Lynch & Co., Inc., No. 11-cv-8472, 2012 WL 1193836, at *3 n.4 (S.D.N.Y. Apr. 6, 2012); see also Pefanis v. Westway Diner, Inc., No. 8-cv-002, 2010 WL 3564426, at *4 n.5 (S.D.N.Y. Sept. 7, 2010).

2

plaintiffs' overtime pay (the "Regular Rate Claim"); (3) violating the prompt payment requirement applicable to overtime pay (the "Timeliness Claim"); and (4) failing to pay plaintiffs' compensatory time at a rate of one and one-half times plaintiffs' regular rate of pay (the "Straight Time Claim").  (Am. Compl. ¶¶ 29–52.)  Defendant answered the amended complaint on October 20, 2016.  (ECF No. 22.)

    A.    Conditional Certification

On October 24, 2016, the plaintiffs moved for conditional certification of a class under 29 U.S.C. § 216(b), comprised of all present and former employees who work or who have worked as Principal Administrative Assistant I and Principal Administrative Assistant II occupations for the City of New York at any of its Department of Homeless Services facilities for any time period since July 15, 2013.  (ECF No. 23.)   On December 5, 2016, the Court conditionally certified a modified version of the class, comprised of only those employees who work or worked during the relevant period at "DHS's 33 Beaver Street location." (ECF No. 34, at 2.)

Following the conditional certification, 30 plaintiffs opted into the class.  Of those 30, the only claim all plaintiffs share is the "Off-the-Clock" claim.  Nineteen claim they were negatively impacted under Count II, eight under Count III, and five under Count IV.  In support of their Motion to Dismiss, defendant submitted the depositions of all 30 plaintiffs.  (ECF No. 79.)

    B.    CityTime

The City uses a program called "CityTime," a web-based program through which City employees manage their time at work, electronically submit time sheets,

and make requests for overtime compensation.  (ECF No. 81, Statement of Additional Undisputed Material Facts ("AUMF"), ¶¶ 37–38.)  When plaintiffs work hours beyond their regularly-scheduled shifts, they are responsible for submitting requests for compensation through CityTime.  (Id. ¶ 46.)  CityTime instructs the employees to certify and review their hours weekly, including whether they worked any time outside of their regularly scheduled hours.  (Id. ¶ 58.)  When employees work beyond their regularly scheduled hours without requesting overtime compensation, CityTime records their hours as "noncompensable."  (Id. ¶ 75.)

Plaintiffs regularly request and receive overtime compensation for work performed outside of their regular shifts.  (Id. ¶ 79.)  Since July 15, 2013, 98.5% of plaintiffs' overtime requests have been approved and they have been paid approximately $366,015 in overtime payments.  (Id. ¶¶ 84, 88.)

II.     LEGAL PRINCIPLES

Section 216(b) of the FLSA authorizes employees to maintain collective actions where they are "similarly situated" with respect to the alleged violations of the FLSA.  29 U.S.C. § 216(b); Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).  Similarly situated employees must "opt in" to an action by filing a "consent in writing to become . . . a party." 29 U.S.C. § 216(b).

Certification of a "collective action" is a two-step process in the Second Circuit.  See Myers, 624 F.3d at 554–55.  At the first step (conditional certification), the Court simply authorizes notice to be sent to potential similarly situated plaintiffs.  Id. at 555.  Plaintiffs bear the light burden of making a "modest factual

showing" that the named initial plaintiffs and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Id. (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). The burden may be satisfied through the pleadings and affidavits alone. Iglesias-Mendoza v. La Belle Farm. Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007).

At the second step, defendant has the opportunity to move for decertification if, after additional discovery, the record shows that the opt-in plaintiffs are not, in fact, similarly situated to the named plaintiffs. See Myers, 624 F.3d at 555.

The Court must apply a more "stringent standard" of proof in this second stage for determining whether plaintiffs are similarly situated for the purposes of the FLSA. See Damassia v. Duane Reade, Inc., No. 04-cv-8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006). The Second Circuit has yet to prescribe a particular method for determining whether members of a class are similarly situated; however, district courts typically look to the: "1) disparate factual and employment settings of the individual plaintiffs; 2) defenses available to defendants which appear to be individual to each plaintiff; and 3) fairness and procedural considerations counseling for or against [collective action treatment]." Zivali v. AT & T Mobility, LLC, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (internal quotation marks omitted).

The burden is on the plaintiffs to prove that all class members are similarly situated. See Ayers v. SGS Control Servs., Inc., No. 03-cv-9078, 2007 WL 646326, at *4 (S.D.N.Y. Feb. 26, 2007). "All that is required is a persuasive showing that

the original and opt-in plaintiffs were common victims of a FLSA violation pursuant to a systematically-applied company policy or practice such that there exist common questions of law and fact that justify representational litigation." Pefanis, 2010 WL 3564426, at *4.  "Plaintiffs need not present evidence for 'each and every" opt-in Plaintiff so long as they can show that Defendants engaged in a policy, plan, or scheme of FLSA violations." Gayle v. Harry's Nurses Registry, Inc., No. 07-cv-4672, 2012 WL 686860, at *5 (E.D.N.Y. Mar. 2, 2012).

If the records show all putative class members are "similarly situated," the "conditional" aspect is removed, the collective action is finally certified, and the matter proceeds to trial.  See Canales v. 115 Broadway Corp., No. 09-cv-4674, 2009 WL 3029333, at *2 (S.D.N.Y. Sept. 22, 2009).  If the court finds all class members are not similarly situated, "the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims." Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

Differing factual circumstances, particularly with regard to differences in supervisory authority, can provide justification for decertification. See Thind v. Healthfirst Mgmt. Servs., LLC, No. 14-cv-9539, 2016 WL 7187627, at *3 (S.D.N.Y. Dec. 9, 2016) (decertifying a class of plaintiffs where some were expressly authorized to work off the clock while others were never directed to do so); see also Zivali, 784 F. Supp. 2d at 467–468 (decertifying in part because the "knowledge of each individual manager varies widely," thus making the defenses highly individualized); Morano v. Intercontinental Capital Grp., Inc., No. 10-cv-2192, 2012

6

WL 2952893, at *7 (S.D.N.Y. July 17, 2012) (decertifying in part based on "differences in . . . supervising directives"); King v. CVS/Caremark Corp., No. 07-21824-Civ, 2008 WL 5973490, at *2–5 (S.D. Fla. Sept. 11, 2008) (granting motion for decertification in part because plaintiff's claims were "critically determined by the identity of the store manager and/or supervisor"); King v. West Corp., No. 08:04CV318, 2006 WL 118577, at *15 (D. Neb. Jan. 13, 2006) (decertifying a class where differences in terms of managers and factual situations would result in "essentially individual trials").

III. DISCUSSION

Core issues in this action include whether the City had actual or constructive knowledge that plaintiffs were working outside of their regular hours without compensation, see Kuebel v. Black & Decker, Inc., 643 F.3d 352, 361 (2d Cir. 2011) ("To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."); see also Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir. 1998) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours."), and whether the practices of the City supervisors were generally uniform, see Thind, 2016 WL 7187627; Zivali, 784 F. Supp. 2d at 467–68. For the reasons discussed below, and primarily because the answer to these questions depends upon the facts related to several supervisors involved, the Court finds that collective

7

treatment of all opt-in plaintiffs as a single group is inappropriate. However, as discussed below, smaller "sub-groups" may well be appropriate.[2]

Defendant makes three arguments that the § 216(b) class should be decertified: 1) that the plaintiffs are not similarly situated with respect to their job duties; 2) that the plaintiffs are not similarly situated with respect to the impact of the City's overtime policies; and 3) that the differences between plaintiffs lend themselves to individual defenses by the City. In contrast, plaintiffs argue that the circumstances in which the jobs are performed are similar enough, that individual defenses do not predominate, and that fairness considerations tilt the balance towards certification. Plaintiffs fail to address, however, defendant's argument as to the factual differences between employees and their supervisors with respect to the overtime policies. The Court agrees with the defendant that various differences make decertification appropriate.

### A.  Disparate Factual and Employment Settings

Plaintiffs' burden, at this stage, is to make a "persuasive showing that the original and opt-in plaintiffs were common victims of a FLSA violation pursuant to a systematically-applied company policy or practice such that there exist common questions of law and fact that justify representational litigation" Pefanis, 2010 WL 3564426 at *4. In order to be amenable to class certification, plaintiffs must allege

---

[2] A determination that decertification is appropriate has implications for the use of common proof for summary judgment. Thus, while defendants request a particular order of decision (with a ruling on summary judgment followed by a ruling on the certification motion), the Court concludes that if there is sufficient "uncommon" proof to merit decertification, then the Court cannot ignore that fact in ruling on summary judgment.

that "the practices and culture of which they complain are sufficiently uniform and pervasive as to warrant class treatment." Zivali, 784 F. Supp. 2d at 463 (internal quotations marks omitted). While in Zivali the group seeking class treatment was considerably more sprawling—4,100 opt-in plaintiffs at over 2000 locations—the Court finds that the same principles apply here.

The defendants have proffered evidence in support of a number of differences between the opt-in plaintiffs: varying levels of responsibility, times that employees were on and off-site, and, critically, different supervisors. Plaintiffs have not persuasively countered this evidence. To demonstrate why collective treatment under the FLSA is not appropriate here, the Court need only focus on one issue: the role of the supervisor, which plainly differs by group of employees. The Court illustrates with a few examples below.

Plaintiff Barksdale, whose job it was to approve employee requests for overtime, was told that even where overtime had not been previously approved, it could still be approved through the CityTime system. (Ex. L, Barksdale Tr., at 31–32.) Moreover, she could not recall any instances in which she had not approved overtime requests, even where they had not been previously approved. (Id.) These facts suggest a real defense as to defendant's knowledge of any uncompensated time.

Plaintiff Gonzales-Vera testified that she frequently made requests for overtime from her supervisor, including when she worked through lunch, which were never denied. (Ex. W, Gonzales-Vera Tr., 58–60.) This also—for different

9

reasons—suggests a lack of employer knowledge of uncompensated work. Plaintiff Carroll had never submitted an overtime request for work done in portions of her meal periods because she hadn't thought to do so. (Ex. N, Carroll Tr., 46–47.) As to Carroll, it is unclear whether any policy or practice prevented or impeded payment, or whether her supervisor was aware of her work. Plaintiff Brisbane understood that if she entered in her overtime hours at the end of each week, she would be compensated, seeking approval from her supervisors through CityTime. (Ex. M, Brisbane Tr., 42–44.) Plaintiff Chase's experience of whether or not overtime was approved varied depending upon which supervisor she had; furthermore, she typically did not request overtime when she worked through her meals. (Ex. O, Chase Tr., 34–36; 45–48.)

Plaintiffs' depositions further indicate critical differences in what supervisors told their employees about overtime—ranging from those who said directly that plaintiffs would not be paid for overtime due to "budgetary" concerns (Ex. CC, Lynch Tr., 38–40), those who said "no overtime" unless the employees were working on "special projects," (Ex. HH, Nyack Tr., 43–44), to those whose supervisors regularly approved requests for overtime even <u>after</u> the overtime was worked. (Ex. S, Davis-Williams Tr., 37, 72–73.)

In light of these variations, and plaintiffs' failure to respond to them, the Court finds that decertification is appropriate.

B.  Individual Defenses

As mentioned above, the City's defenses will likely be highly individualized. The City's knowledge of the alleged uncompensated time could vary from plaintiff to plaintiff, supervisor to supervisor, and unit to unit.  Furthermore, defendant claims that plaintiffs' actions—either in failing to request compensation through CityTime or in failing to timely do so—account for the uncompensated time and/or untimely payments.  This, too, will require evidence that is not common to the proposed collective.

C.  Fairness and Procedural Considerations

The plaintiffs assert that fairness and procedural considerations dictate that class treatment is appropriate here, arguing that individual actions will be burdensome to the plaintiffs, City, and the Court—what they deem a "ridiculous result."

However, given the factual distinctions between plaintiffs (or at least groups of plaintiffs), the procedural benefits are few—indeed, each plaintiff would need to present evidence about their failure to receive overtime compensation, subject to cross-examination and individual challenges by the defendant.  While here, the scope is less expansive than in Zivali, the underlying issue is the same; thus, the Court finds that similarly, the individual factual issues would "eliminate any judicial efficiency that might be gained through a collective action approach." Zivali, 784 F. Supp. 2d at 459 (internal quotation marks omitted).

11

As noted above, while the Court finds that the certification of the <u>entire</u> § 216(b) class is not appropriate, there may nevertheless be groups, or "sub-classes" of plaintiffs, perhaps organized by unit or supervisor, for whom collective resolution of their claims would be efficient.  The parties are invited to confer as to whether such groups may exist and, if so, to proceed in that manner.

In sum, the Court finds that, upon more "stringent" examination, the plaintiffs have not met their burden to show that the class members are similarly situated for the purposes of § 216(b) certification.  The class is therefore decertified.

IV.   CONCLUSION

For the reasons discussed above, defendant's motion to decertify the conditional class is GRANTED.

Based upon the decertification, the parties should reevaluate the evidence they need to support the positions of any particular plaintiffs.  Accordingly, the parties shall advise the Court **not later than Thursday, November 9, 2017**, whether they stand on their partial motions for summary judgment as written, or

whether they would like to change or modify them to take into account any additional evidence they would like to submit.

    SO ORDERED.

Dated:    New York, New York
            October 27, 2017

                                                KATHERINE B. FORREST
                                                United States District Judge