UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
NORMA LYNCH, LINDA BRISBANE, CYMAH :
LOVELL, KENNETH MILLER, NATISHA      :
SMITH, and CHIVON DANIELS,           :
                                                             :
                                    Plaintiffs,              :
                                                             :
          -v-                                                :
                                                             :
THE CITY OF NEW YORK,                                        :
                                                             :
                                    Defendant.               :
                                                             :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>March 12, 2018</u>

16-cv-5677 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

In this case, six employees of New York's Department of Homeless Services ("DHS") ("plaintiffs") filed suit against the City of New York (the "City") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (ECF No. 21.) They allege that New York City's Department of Homeless Services ("DHS") engaged in a number of illegal employment practices, including, inter alia, failing to compensate plaintiffs for hours they worked in addition to their scheduled shifts. (Id.)

After this Court decertified a § 216(b) class, the parties re-filed cross motions for Summary Judgment.[1]

For the reasons set forth below, the Court grants partial summary judgment to the plaintiffs. With regard to timeliness, willfulness, and damages, several

---

[1] The defendant initially filed motion papers relating to decertification and seeking summary judgment.

triable issues remain.  The Court shall set a trial date for those issues by separate Order.

I.      BACKGROUND

    A.      Factual Background

The following facts are materially undisputed and all inferences are drawn in favor of the plaintiff.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Plaintiffs are six current or former Principal Administrative Associates, Level 1 ("PAA-1") or Level 2 ("PAA-2") who worked at DHS at some point since July 15, 2013.  Each of them claims that they were not compensated for all the time that they worked (the "Off-the-Clock Claim"); several of them claim other FLSA violations, including that the City improperly calculated the regular rate of pay— both by failing to include compensatory meal payments and to calculate the night shift differential (the "Regular Rate Claim"), that they were improperly compensated with straight time for overtime, rather than time and one-half, as required under the FLSA (the "Straight Time Claim"), and that overtime compensation was not paid to them in a timely manner (the "Timeliness Claim).  See 29 U.S.C. § 207(a), (o).

        1.      City Time

Since 2009, the City has used a web-based program called "CityTime," in order for City employees to manage their time at work, electronically submit time sheets, and make requests for overtime compensation.[2]  (ECF No. 98, Defendant's

---

[2] DHS began using CityTime in 2010.

Statement of Undisputed Material Facts ("DSUMF"), ¶ 41.) DHS Employees log in and out of CityTime when arriving to and leaving work. (ECF No. 102, Plaintiffs" Response to DSUMF ("Plaintiffs' Response") ¶ 42). CityTime automatically deducts one hour of pay for lunch at the end of each day. (Id. ¶ 68.)

It is the official policy of DHS that any overtime requests have to be preapproved by an employee's supervisor. (Id. ¶ 60.) If they are preapproved, the employee can then submit a request for overtime compensation through CityTime. If, however, no such request is made, any additional hours worked by the employee will be recorded as "noncompensable." (Id. ¶ 82.) Despite the official DHS policy, it appears that there are times when overtime that has not been preapproved is nevertheless compensated.

CityTime instructs the employees to certify and review their hours weekly, including whether they worked any time outside of their regularly scheduled hours. (Id. ¶ 64.)

2. DHS Overtime Policies

The City's official policy states that "all overtime work is to be approved by appropriate management and supervisory staff before the work is begun . . . ." (ECF No. 96-6, Faulman Decl., Ex. 5 at 1.) Furthermore, "[e]ach manager is responsible for managing his/her staff and workload to minimize the need for paid overtime." (Id. at 2–3.) The policy states, however, that the "employee is responsible for recording all overtime hours worked in CityTime including details of overtime worked . . . ." (Id. at 3.) The policy also allows employees to be compensated for overtime work by accruing compensatory time. (Id. at 4.)

The City also offers "meal allowance payments" which are paid when an employee works a certain number of continuous hours over time <u>and</u> chooses to receive his or her compensation in compensatory time rather than in cash. When an employee works two continuous hours of overtime, he or she receives an $8.25 meal allowance payment. (ECF No. 95, Plaintiffs' Statement of Undisputed Material Facts ("PSUMF") ¶ 65.) The payments increase with the hours worked, topping out at a $12.75 payment for fifteen continuous hours of overtime. (<u>Id.</u>)

Employees need not submit receipts for meals purchased with this money, nor do they receive this allowance should they elect to receive their compensation in cash. (<u>Id.</u> ¶ 63.) The meal allowance payments are treated as ordinary income for tax purposes by the city. (<u>Id.</u> ¶ 64.)

### 3. The Plaintiffs

The six plaintiffs have all testified that they have worked significant periods of time for which they were uncompensated; furthermore, they have testified that their supervisors had knowledge of the extra uncompensated hours in which they worked. The Court will briefly describe each plaintiff and the core aspects of his or her claims.

#### a) Norma Lynch

During the relevant period, Norma Lynch worked as a payment analyst (Level PAA-1) and was supervised by Jean Meleschi and Joshua Lombay. (Lynch Dep. at 14: 13-20; 17:1-14).

In her deposition, Lynch testified that she understood how to use CityTime and that she had completed part of the online training, though not all of it. (<u>Id.</u> at

24.) She further testified that she often arrived at work as much as two hours before her scheduled shifts began, and that she took her full lunch period usually no more than twice a week. (Id. at 30, 36.)

Lynch stated in her deposition that she had been actively discouraged from seeking overtime compensation. According to Lynch, supervisor Meleschi told her "numerous times" that she would not receive paid overtime even if she requested it, and that because of "budgetary problems . . . they were not going to pay [her]." (Id. at 39–40.) Over her years at DHS she says that she asked her supervisor "a few times" for preapproved overtime, but stopped asking after he told her that they were not going to pay her. (Id. at 44.) Despite not requesting overtime, she worked many hours beyond her regularly scheduled shifts. Lynch testified: "the work still had to get done so I would come and do it." (Id. at 47.)

According to Lynch, her supervisor was aware of the extra hours she worked, since he sat "right next to [her] and he saw [her] working, actually working." (Id. at 44.) He would also give her instructions when he arrived at work at 6:00 a.m. (Id.) According to Lynch, based on her observation of, inter alia, his physical proximity, "he knew I worked through—before—well, before my actual starting time and he also knew that I worked during lunch." (Id.)

b) Linda Brisbane

During the relevant period, Linda Brisbane worked in the Department of Finance (PAA-II), and was supervised by Deborah Coleman. (Brisbane Dep. at 18, 27.)

In her deposition, Brisbane testified that her training in CityTime consisted of a PowerPoint presentation. (Id. at 38.) According to Brisbane, she frequently worked later in the day than her scheduled shift—typically she would work late three or four times a week. (Id. at 53.) Most weeks, she took her full lunch break each day; however approximately two to three times a month she worked through her lunch period. (Id. at 59.)

Brisbane's understanding was that she would only be able to request overtime compensation if she first received preapproval; she specifically thought that she was not authorized to do so if she worked through her lunch period. (Id. at 64.)

Brisbane testified that her supervisor knew that she worked through lunch and after hours as the supervisor could see her working at her desk with her computer on at those times. (Id. at 52, 78.) According to Brisbane, Coleman frequently walked from her work station and observed Brisbane at work; furthermore Brisbane had to pass by Coleman's desk when she left at night. (Id. at 84.)

c)  Chivon Daniels

During the relevant period, Chivon Daniels worked as a procurement liaison (PAA-1) and was supervised by both "Vincent" and "Robert." (Daniels Dep., at 13, 29.)

Daniels was not trained in CityTime, though she testified that she knew how to use it. (Id. at 28.) According to Daniels, her supervisors told her that any overtime compensation had to be preapproved. (Id. at 29.) Though she often

worked in excess of her scheduled hours, she never requested overtime compensation.  (Id. at 33.)

Daniels testified that she took her full lunch break as little as one or two times a week, and that she typically got in early and worked late three to four times a week.  (Id. at 43, 54.)

Daniels has identified four supervisors—Vincent Ennett, Andrea Diaz, Sherri Love, and Robert Eyubeh—who had knowledge of her uncompensated work time. (ECF No. 103-2, Pls.' Interr. Resp. at 25.)  She states that their knowledge was either explicit or based on the fact that they assigned her work that "could not be completed within the confines of [her] scheduled, paid shift."  (Id.)

d)  Cymah Lovell

During the relevant period, Cymah Lovell was employed as a budget analyst (PAA-2), and was supervised by Robert Eyubeh.  (Lovell Dep., at 15, 37.)

Lovell received booklets and pamphlets about how to use CityTime.  (Id. at 33.)  It was her understanding that in order to receive any overtime compensation it would have to be preapproved.  (Id. at 37.)  Lovell testified that she worked past her regularly scheduled hours "all the time," frequently working until 7:00, 8:00, or 9:00 p.m., even though her shift ended at 6:00 p.m.  (Id. at 40.)  She also typically arrived for work a half an hour before her shift was scheduled to begin.  (Id. at 46.) Nevertheless, she did not request overtime due to what she said was an "unwritten rule" that "there was no overtime in budget."  (Id. at 41.)  She derived this understanding both from her supervisor, Eyubeh, who she testifies told her, "Don't put in for it.  Don't ask for it," and from a co-worker, Mark Gartsl, who had had his

overtime requests "angrily handed back to him." (Id. at 41, 42, 68.) According to Lovell, since "it was understood" that she would not receive any overtime compensation she "just did [her] work and when it was done, if it was 7:30, that's when [she] left." (Id. at 43.)

Lovell further testified that her supervisor was aware of the extra hours that she worked, as she "sat right in front of him" and because "the size of [her] workload is such that [she] must consistently perform work outside of [her] scheduled shift in order to complete [her] assigned duties." (Id. at 67.)

e)    Kenneth Miller

During the relevant period, Kenneth Miller was employed as a PAA-2, and was supervised by "Mike" and "Alice." (Miller Dep., at 13, 49.)

Miller testified that he frequently worked uncompensated hours in excess of his scheduled shifts. He regularly arrived a half an hour early at work and worked late two to four times most weeks. (Id. at 52–53.) He usually took a full lunch hour only twice a week; the remainder of the time he worked for at least half of his lunch period. (Id. at 57.) Unlike the other plaintiffs, Miller would regularly request overtime compensation when his supervisors came to him with major projects that required significant amounts of extra time. (Id. at 53.) However, he also frequently did not request overtime when he would stay late for shorter periods. (Id.) He never requested overtime compensation for time he worked during his lunch period.

According to Miller, his supervisors knew that he worked during his lunch period, because they would often "be walking in and out for meetings," could "see his screen," and interacted with him throughout the lunch hour and after hours.

(Id. at 67–69.)  He typically saw his supervisor Mike when he arrived early in the mornings; additionally, his supervisor Alice was able to see his computer from her office.  (Id. at 69.)

f)  Natisha Smith

During the relevant period, Smith was employed as both an office manager and in Quality Insurance at DHS (PAA-1).  (Smith Dep., at 14.)

She did not receive CityTime training, but testified that she knows how to use it.  (Id. at 28.)  She would occasionally request overtime, if it was preapproved by her supervisor.  (Id. at 34.)  Frequently, however, she would work for short periods after her regular shift ended without preapproval and was uncompensated for those minutes.  (Id.)  On occasion, she worked through her lunch period, though she frequently took it.  (Id. at 45.)

Smith has identified Joicelyn McMillian-Green as a supervisor with knowledge that she was working uncompensated hours, by virtue of the fact that she assigned work that could not be completed within her regular shift.  (Pls.' Interr. Resp. at 112.)

4. Expert Reports

Both parties submit reports by their experts, estimating damages by assessing noncompensable minutes through the CityTime system.  Plaintiffs' expert is Dr. Louis R. Lanier, PhD.  (ECF No. 96-11, Faulman Decl., Ex. 9.)  To prepare his report, Lanier analyzed the payroll (FISA) and punch (CityTime) date provided by the City and calculated total unpaid back pay owed.  (Id.)  He calculated that the six plaintiffs had recorded 110,067 uncompensated minutes on CityTime from the start

of each plaintiff's three-year eligibility period through September 2, 2017 and 94,587 minutes from the start of each plaintiff's two-year eligibility period through September 2, 2017. (Id.) He further parsed the numbers by plaintiff and claim. (Id.)

Defendant's expert is Christopher Erath, PhD. Dr. Erath points to multiple errors in Lanier's reports, including, inter alia, extrapolating data between April-September 2017 based upon an average of previous weekly damages. (ECF No. 96-12, Faulman. Decl., Ex. 10.)

## B. Procedural Background

On July 15, 2016, a group of plaintiffs filed suit against DHS under the FLSA. (ECF No. 1.) Defendant moved to dismiss on September 16, 2016. (ECF No. 14.) Plaintiffs amended their complaint on October 4, 2016. (ECF No. 21.)

On October 24, 2016, plaintiffs moved to certify a collective pursuant to 29 U.S.C. § 216(b). The collective was conditionally certified in part on December 5, 2016. (ECF No. 34.) Both parties then filed motions for partial summary judgment; the defendant also moved to decertify the class.[3] (ECF Nos. 72, 76.) On October 27, 2017, this Court granted defendant's motion for decertification, and denied both summary judgment motions with leave to refile. (ECF No. 87.)

Cross-motions for summary judgment followed. (ECF Nos. 93, 97.)

---

[3] Courts often refer to this step in FLSA litigation as "decertification." This term is not precise as the first stage of the process is not a true "certification," but rather a "conditional certification" that only allows for the sending of notice to potential class members. See Hernandez v. Merrill Lynch & Co., Inc., 2012 WL 1193836, at *3 n.4 (S.D.N.Y. Apr. 6, 2012); see also Pefanis v. Westway Diner, Inc., 2010 WL 3564426, at *4 n.5 (S.D.N.Y. Sept. 7, 2010).

II.     LEGAL PRINCIPLES

A.     Summary Judgment

Summary Judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322–23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, citations, and alterations omitted). In

addition, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted).

"The same standard[s] appl[y] where, as here, the parties file [] cross-motions for summary judgment . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inference must be drawn against the party whose motion is under consideration." Id. (internal citations omitted.)

B.    Unpaid Overtime under the FLSA

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that [he or she] performed work for which [he or she] was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011); see also 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time").

The "employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable." Kuebel, 643 F.3d at 363. See also 29 U.S.C. § 211(c) (requiring employers subject to the FLSA to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records"); Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 946 (2d Cir. 1959)

(Friendly, J.) (noting that an employer's obligation to maintain records cannot be discharged "by attempting to transfer his statutory burdens of accurate record keeping . . . to the employee. The employer at its peril ha[s] to keep track of the amount of overtime work by those of its employees . . . .") (internal quotations marks and citations omitted).

Therefore, "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." Kuebel, 643 F.3d at 363; see also Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir. 1998) (holding same). Whether an employer had actual or constructive knowledge of an employee's unpaid work is a question of fact. Holzapfel, 145 F.3d at 521.

"An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance." Chao v. Gotham Registry, Inc., 514 F.3d 280, 288 (2d Cir. 2008). The employer's duty persists even where "the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." Id.; see also Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 718 (2d Cir. 2011).

In Foster v. City of New York/De La Cruz v. New York ("Foster/DLC"), the court recently granted summary judgment to plaintiffs under similar circumstances where, as in this case, defendant attempted to transfer its record keeping duties on to plaintiffs through the CityTime system. (ECF No. 96-17, Faulman Decl., Ex. 15.)

Similarly, in <u>Perez v. City of New York</u>, 2017 WL 4326105, at *13 (S.D.N.Y. Sept. 27, 2017), the court rejected defendant's argument that it was not liable for uncompensated overtime that its employees did not enter into the CityTime system.[4]

C.    <u>Regular Rate, Time and a Half, and Timely Payment</u>

The FLSA imposes numerous obligations upon employers. Among them are the requirements that: 1) employees be compensated for all hours worked over 40 during each workweek "at a rate not less than one and one-half times the <u>regular rate</u> at which [they] are employed," 29 U.S.C. § 207(a)(1) (emphasis added); 2) for employees in the public sector, compensatory time also be given at a rate "not less than one and one-half hours for each hour of employment for which overtime compensation is required," 29 U.S.C. § 207(o)(1); and 3) payment of overtime compensation under the FLSA "may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made," 29 C.F.R. § 778.106.

1.    <u>Regular Rate</u>

The regular rate of pay is the "keystone" for calculating the rate at which overtime is paid under the FLSA. <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>, 325 U.S. 419, 424 (1945). The employee's regular rate shall include "all

---

[4] In that case, only the defendant had moved for summary judgment. Having determined that it had not shown that CityTime absolved it of its liability, the case proceeded to trial to determine actual and constructive knowledge.

remuneration for employment paid to, or on behalf of, the employee," unless such remuneration falls into a limited series of statutory exclusions. 29 U.S.C. § 207(e). "An employee's regular rate of pay includes shift differentials," including both the night shift differential pay and/or meal allowance payments in weeks in which the plaintiff worked overtime. Eka v. Brookdale Hosp. Med. Ctr., 2016 U.S. Dist. LEXIS 120213, at *11 (S.D.N.Y. Sept. 2, 2016); see also Foster/DLC, at 66–67 (including both meal allowance payments and night shift differentials in the regular rate for purposes of calculating the regular rate).

Reimbursements for expenses are typically considered exclusions from the regular rate under 29 U.S.C. § 207(e)(2). However, where an additional payment is made to an employee that is not reimbursing an expense, even where it is labeled a "meal allowance payment," it is properly included in the employee's regular rate for the purposes of calculating overtime compensation. See, e.g., Foster/DLC, at 66–67 (including the meal allowances per City policy as part of the employees regular rate); Hanson v. Camin Cargo Control, Inc., 2015 WL 1737394, at *5 (S.D. Tex. Apr. 16, 2015) (finding that since the meal payments in question were based "only on hours and not on actual expenses," and since "neither receipts nor requests for reimbursement were necessary," that the meal payments had been improperly excluded from the regular rate calculation); see also Gagnon v. United Technisource, Inc., 607 F.3d 1036, 1041 (5th Cir. 2010) (noting that where meal allowances correspond to the number of hours worked as opposed to actual meal expenses, that the payments are "part of the regular rate in their entirety").

Here, defendant argues that since the meal allowance payments, which are given only when plaintiffs work more than two hours beyond their regular shift <u>and</u> choose to take their compensation in the form of compensatory time, are a "necessity, not a perk," that they should be properly excluded from the regular rate calculation. It cites in support <u>Acton v. City of Columbia</u>, 2004 U.S. Dist. LEXIS 19004, at *22 (W.D. Mo. Sept. 10, 2004), in which the court held that meal allowances for firefighters who regularly worked twenty-four hour shifts should not be included in their regular rate for purposes of the overtime calculation. The question in that case hinged, however, upon whether the meal payments were for the convenience of the employer or the employee, and whether the firefighters were considered "out of town" under 29 C.F.R. §§ 778.217(a), (b)(3). The court concluded that since they were effectively "out of town" and the benefits were for the convenience of the employer, the payments were properly excluded from the regular rate.

Defendant's reliance on <u>Acton</u> is unpersuasive; the extra payments made to employees based upon how many extra hours they work, even though styled as "meal reimbursements," are more properly considered as part of the regular rate.

2.  <u>Time and a Half</u>

29 U.S.C. § 207(a) states that compensation for hours worked in excess of forty hours per week, shall be compensated at "a rate not less than one and one-half times" the regular rate. 29 U.S.C. § 207(o)(1) allows employees working in the public sector to receive compensatory time instead of cash if they so choose.

However, it specifies that compensatory time must also accrue at a rate of not less than one and one-half hours for each hour of overtime work. 29 U.S.C. § 207(o)(1).

### 3. Timely Payments

"[I]t is clear that the FLSA requires wages to be paid in a timely fashion." Rogers v. City of Troy, 148 F.3d 52, 57 (2d Cir. 1998). Overtime payments "may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." 29 C.F.R. § 778.106. Guidance from the U.S. Department of Labor "specifically prohibits extending the processing period beyond the following pay period's paycheck." Brennan v. City Of Philadelphia, 2016 WL 3405449, at *2 (E.D. Pa. June 21, 2016). However, "an inquiry into an employer's liability for late payment of overtime focuses not only on how often late payments were made or how late they were, but also on whether the payments were made as soon as practicable." Conzo v. City of New York, 667 F. Supp. 2d 279, 288 (S.D.N.Y. 2009). Issues that affect the practicability of payment could include both archaic and difficult-to-manage payroll systems; they could also include the failure of plaintiffs to correctly record their own overtime. Id. at 288–89.

### D. Liquidated Damages

"Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." Barfield v. N.Y. City Health and Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008); see 29 U.S.C. § 216(b) ("Any employer who violates [the overtime provisions of the FLSA] shall be liable to

the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."). Liquidated damages are considered to be compensatory, rather than punitive; they are meant to compensate the employee for the delay in wages caused by the FLSA violation. Herman v. RSR Sec. Servs. Ltd, 172 F.3d 132, 142 (2d Cir. 1999).

While the court has discretion to deny liquidated damages where the employer shows that it acted in subjective good faith with objective reasonable grounds for believing that its acts or omissions did not violate the FLSA, the employer's burden is "a difficult one." Id. Indeed, "double damages [are] the norm and single damages the exception." Id.

An employer can meet the burden of subjective good faith by showing that it took "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." Id. This requires the defense to proffer "plain and substantial evidence of at least an honest intention to ascertain what the [FLSA] requires and to comply with it." Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987).

An employer's actions are objectively unreasonable when it knows of the FLSA's requirements but does not take steps to comply with them. Herman v. RSR Sec. Servs. Ltd., 172 F.3d at 142–43.

E.  Statute of Limitations

The FLSA has a two-year statute of limitations; however, upon a showing that the defendant's violation was "willful," the limitations period can be extended to three years. 29 U.S.C. § 255(a). "[T]o prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either

18

knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." <u>Parada v. Banco Indus. De Venez.</u>, 753 F.3d 62, 71 (2d Cir. 2014) (quoting <u>Reich v. Waldbaum, Inc.</u>, 52 F.3d 35, 39 (2d Cir. 1995).

The burden is on the plaintiffs to show that the defendant's violation was willful. <u>See, e.g.</u>, <u>Bowrin v. Catholic Guardian Soc'y</u>, 417 F. Supp. 2d 449, 475 (S.D.N.Y. 2006). Where a defendant is on notice of its unlawful practices, but nevertheless continues them, willfulness may be found. <u>See, e.g.</u>, <u>Rojas v. Splendor Landscape Designs Ltd.</u>, 268 F. Supp. 3d 405, 411 (E.D.N.Y. July 31, 2017).

III. DISCUSSION

Plaintiffs and defendant bring cross motions for summary judgment on a host of claims. Plaintiffs seek summary judgment on all four of their claims: 1) the Off-the-Clock Claim; 2) the Regular Rate Claim; 3) the Straight Time Claim; and 4) the Timeliness Claim. They further seek summary judgment as to liquidated damages and willfulness.

For its part, the City moves for partial summary judgment. It claims, first, that it did not have actual or constructive knowledge of uncompensated time, and that therefore, it is not liable under the FLSA for time worked before, after, and during meals, and thus seeks summary judgment on the Off-the-Clock Claim. It further seeks summary judgment as to the regular rate calculation, arguing that meal allowance payments should be excluded from the regular rate.[5] It seeks summary judgment on the Timeliness Claim, stating that the record evidence shows

---

[5] It does not, however, seek summary judgment as to the night shift differential.

that payments of overtime were made as soon as practicable. Fourth, it argues it is entitled to summary judgment with respect to any claim for which an individual plaintiff has not shown damages.

Finally, it argues that it acted in good faith, such that liquidated damages are inappropriate, and that plaintiffs have not proved willfulness.

A.    Off-the-Clock Claim

The heart of plaintiffs' claim is that they worked many uncompensated hours, either because they were actively dissuaded from requesting overtime or because they were under the impression that it would not be given. Defendant responds that without knowledge of uncompensated work time, it is not in violation of the FLSA.

As discussed above, in order for an employer to be liable under the FLSA, a plaintiff must prove both that he worked uncompensated time and that his or her employer had either actual or constructive knowledge of that work. Kuebel, 643 F.3d at 361. The employer cannot discharge the burden of record-keeping to his employees; furthermore it must take active steps to "prevent" the performance of uncompensated work. Id. at 363; Chao, 514 F.3d at 288.

1.    Uncompensated Work

Plaintiffs have proffered extensive evidence, primarily in the form of their depositions, that they frequently worked before and after work, as well as during their meal times, without being compensated. Plaintiffs Lynch, Lovell, and Miller all reported regularly arriving at work well in advance of their scheduled shifts and working without compensation. All plaintiffs report at least occasionally working

later than their scheduled shifts—and some did it with regularity—without being compensated. All also report at least occasionally working through the unpaid lunch period, with the majority reporting that this happened several times a week.

Moreover, the CityTime system has captured large numbers of what it calls "noncompensable" minutes—a strong indication that plaintiffs were indeed at work, and working, during the hours they claim to have been.

Defendant has offered nothing to rebut this evidence other than speculation that there may have been hours that the employees were present at their work stations but not, in fact, working. Defendant argues that without "time-stamped electronic or paper records," telephone records, or email records that show that plaintiffs were working, plaintiffs' depositions are inadequate. However, defendant has not offered cognizable evidence that raises any questions of fact as to the plaintiffs' work hours.

Based upon the uncontroverted evidence, the Court concludes that plaintiffs worked minutes outside of their shifts for which they were uncompensated and they are entitled to summary judgment on this issue.

2. Supervisor Knowledge

In order for the Court to find liability under the FLSA, it must further find that the employer had either actual or constructive knowledge that its employees were working without compensation. Kuebel, 643 F.3d at 361. Plaintiffs offer evidence that their supervisors were aware of this work for a host of reasons— physical proximity, work-related interactions, or direct requests to work additional hours. In some cases, they presented uncontroverted evidence that they were in

fact told by their supervisors not to bother requesting overtime as they would not be paid.[6]

Defendant has offered little or nothing, other than argument, to contradict this evidence. It has offered no testimony or declarations from supervisors suggesting that they were unaware of plaintiffs' uncompensated time.

Rather, the nub of defendant's argument is that plaintiffs failed to use the CityTime system to request overtime and that, therefore, it necessarily lacked knowledge that the plaintiffs were working without compensation. While defendant concedes that supervisors were potentially aware that their employees were working extra hours, it questions the supervisors' knowledge that such extra work was underlined_uncompensated. In the face of the undisputed fact that plaintiffs' supervisors were able to view the CityTime data and that they were responsible each week for approving plaintiffs' time in CityTime, this argument must fail. (ECF No. 105, Def.'s Rule 56.1 Response ¶¶ 45–46.)

Defendant argues that since plaintiffs knew how to use CityTime and did, upon occasion, use it, it is "implausible" that the supervisors knew that their employees were working without compensation. But the law does not allow the employer to delegate its duty of record keeping to its employees in this way. See Kuebel, 643 F.3d at 363; Caserta, 273 F.2d at 946. Moreover, given the multiple depositions stating, for example, that plaintiffs were told "not to put in for it,"

---

[6] Defendant's argument that plaintiffs' testimony as to their supervisors' knowledge would not be admissible at trial is unpersuasive. It is potentially admissible both as a party admission (depending on the nature of the testimony), and observation (of a supervisor's observation).

because of "budgetary problems," the Court finds testimony that employees, despite knowing how to request overtime through the CityTime system, did not do so, to be entirely plausible.

In sum, the Court finds that no reasonable juror, on the evidence (and lack of evidence) presented, could find that defendant did not have either actual or constructive knowledge of its employees' uncompensated hours. The Court therefore grants summary judgment to plaintiffs on the Off-the-Clock Claim.

B.    Regular Rate

Plaintiffs move for summary judgment on the Regular Rate Claim, arguing that the City miscalculated the regular rate for purposes of determining overtime compensation—both by excluding the meal reimbursements and by failing to include the night shift differential. Defendant moves for summary judgment only as to the meal allowance payments, stating that they were properly excluded from the regular rate.

1.    Meal Allowance Payments

Plaintiffs argue that the meal allowance payments should be included in the regular rate calculation. According to plaintiffs, the fact that the payments are considered taxable income, that they are not reimbursements for actual expenses, and that they do not require receipts all strengthen their argument, as does the fact that the payments are given only when an employee chooses to receive his or her compensation in the form of compensatory time. For its part, the City argues that the payments are properly excluded from the regular rate under 29 U.S.C. § 207(e). The Court agrees with plaintiffs.

The meal allowance payments relate to the number of extra continuous hours worked—beginning at $8.25 for two continuous hours, and progressing to up to $12.75 for fifteen continuous hours.  (Pls.' Resp. ¶ 164.)  The Court thus finds, as did the Hanson, Gagnon, and Foster/DLC courts, that since the payments were based upon hours and not actual expenses, and since neither requests for reimbursement nor receipts are required, that the payments should be included in the calculation of the regular rate under the FLSA.

The Court therefore GRANTS summary judgment to the plaintiffs on this issue.

2.    Night Shift Differential

There is no dispute between the parties that night shift differentials must be included in the regular rate—the only dispute is whether, here, the City included them or not.

Plaintiffs argue, based upon their expert report, that plaintiffs Daniel's and Miller's regular rates were miscalculated when defendant failed to include the night shift differential.  Defendant, in its report, concedes liability on this point—but argues that 94% of the time, it appropriately calculated the rate inclusive of the night shift differential.

This is inadequate to evade liability—94% of the time is not 100%.  The Court therefore finds that the City is liable for failure to include the night shift differential; the quantum of such differential is a separate question.

Therefore, both for failure to include meal allowance payments and also for failure to include the night shift differential, defendant is liable under the FLSA for

failure to properly calculate the regular rate; the Court accordingly GRANTS summary judgment to the plaintiffs on the Regular Rate Claim.

C.   Straight Time

29 U.S.C. § 207(o)(1) states that, for employees in the public sector, compensatory time must accrue at a "rate of not less than one and one-half hours for each hour of overtime work." Plaintiffs seek summary judgment on the Straight Time Claim, arguing that they were not awarded compensatory time at the required rate of one and one half times.

There is no triable issue here as to liability—defendant's argument that "proper payment was made in 97% of instances" does nothing to relieve it of its responsibility the remaining 3% of the time.[7]

Therefore, the Court GRANTS summary judgment to plaintiffs on the Straight Time Claim.

D.   Timeliness

The FLSA requires that wages be paid "in a timely fashion," Rogers, 148 F.3d at 57, which is generally considered to be within two pay periods, Brennan, 2016 WL 3457668 at *2, but also recognizes that there may be circumstances in which it is not "practicable" for an employer to calculate certain overtime payments. Conzo, 676 F. Supp. 2d at 288–89.

---

[7] There is, however, a question as to the quantum of damages. Plaintiffs appear to be misreading the portion of plaintiff Smith's deposition in which she discusses not being paid time and one-half. In fact, she testified that she was paid straight time when an employee at "Flatlands" and not when she was in a DHS employee. In fact, when she was employed at "33 Beaver" (DHS), she states affirmatively that she never had a time in which she was not paid time and one-half. Nevertheless, given defendant's admission that there were times in which plaintiffs were improperly paid straight time in compensation, damages should be paid for such occasions.

Plaintiffs seek summary judgment for their Timeliness claim, stating that plaintiffs Brisbane, Lovell, Miller, and Smith are owed at least $758 in liquidated damages resulting from a delay of more than twenty-eight days in their overtime payments. They offer as evidence the report of their expert as well as a statement from plaintiff Lovell that her supervisor often forgot to approve her overtime pay.

Defendant replies that plaintiffs have not met their burden, and points to testimony from its supervisors as to possible reasons for delay, including the failure of plaintiffs to timely submit their requests and/or include all the required information. It further offers evidence that overtime compensation was promptly processed in 99% of all cases as evidence that a delay in an occasional payment could easily be attributable to plaintiffs' errors.

This dueling evidence raises a triable issue as to why the payments in question were delayed. Therefore, the Court DENIES summary judgment to both plaintiffs and defendant on the Timeliness Claim.

E.     Liquidated Damages

Under the FLSA, liquidated damages are typically awarded in compensation for the delay in proper payment. Only where an employer makes a two-pronged showing of good faith may the Court award less.

Plaintiffs and defendant both move for summary judgment on this issue. Plaintiffs argue that the City can meet neither prong. Defendant claims that it has established both that it acted objectively reasonably and that it acted with subjective good faith.

1. <u>Objective Reasonableness</u>

First, plaintiffs argue that the City cannot establish objective reasonableness for several reasons: 1) it did not communicate to its supervisors the requirement under the FLSA to pay employees for any work beyond their scheduled shifts; 2) it did not investigate the "noncompensable" time logged on CityTime to see if employees were working at that time; and 3) that the "certification" on CityTime could not remedy the City's FLSA violations.

Defendant points to the high percentage of overtime requested that was approved, as well as to the facts that plaintiffs were instructed on the use of CityTime and were instructed to certify their hours weekly.

The Court agrees with plaintiffs. The lack of any evidence suggesting that defendant took steps to investigate the large number of "noncompensable" minutes or that it communicated with supervisors their duty under the FLSA to ensure that its employees did not work without compensation does not demonstrate objectively reasonable behavior.

2. <u>Subjective Good Faith</u>

As discussed above, an employer can meet the burden of subjective good faith by showing that it took "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." <u>Herman</u>, 172 F.3d at 142. In order to meet its burden it must proffer "plain and substantial evidence" of its attempts to comply with the FLSA. <u>Brock</u>, 833 F.2d at 19.

Plaintiffs argue that the City cannot meet this burden—as it has proffered no evidence of any requests for legal advice with respect to its FLSA practices. They

further argue that the City's failure to investigate plaintiffs' noncompensable minutes weakens any potential showing of good faith.

For its part, the City offers evidence of steps it took to ensure FLSA compliance: 1) providing CityTime training; 2) adding a certification to the weekly timesheets; and 3) convening weekly meetings to make sure CityTime is programmed to comply with the FLSA.

Critically, however, the City's chief employment lawyer, Mary Pestana, testified that she could not remember contact with anyone from DHS at any time in the past five years about FLSA compliance. (ECF No. 79-8, Pestana Dep. at 23.) She also could not recall any conversations about including information on employees' rights under the FLSA in employee training. (Id. at 27.) She further testified that the City did not perform any investigations as to whether employees were in fact working during time that CityTime recorded as noncompensable, stating that the City had "actual knowledge" that its employees were not working during that time since those employees "didn't put into be paid." (Id. at 42.)

On this testimony, the Court does not find that the kind of "plain and substantial" evidence of "active steps" towards compliance with the FLSA required to show subjective good faith.

In sum, then, the City has failed to carry its burden to show that the Court should veer from an award of liquidated damages. Therefore, the Court GRANTS summary judgment to the plaintiffs on the issue of liquidated damages.

F.    Willfulness

Finally, plaintiffs argue that the statute of limitations should be extended to three years, due to the City's "willful" violation of the FLSA.  Defendant argues that the statute of limitations should be limited to two years and that plaintiffs have not met their burden to prove that the limitations period should be extended.

To establish a willful violation, plaintiffs must show that the City "either knew or showed reckless disregard" for FLSA's requirements.  Parada, 753 F.3d at 71.  Even if, as here, an employer is showed to have acted "unreasonably, . . . its action should not be considered willful."  Id.

The nub of plaintiffs' argument is that the City was on notice of its violations given several other lawsuits under the FLSA since the implementation of CityTime. They argue that there have been at least eleven lawsuits, in which the City has been held liable in three.  Defendant counters that many of those other lawsuits are on appeal at the moment and that several of them were filed subsequent to this lawsuit.

The Court finds that while plaintiffs have not established willfulness as a matter of law, they have raised triable issues.

Therefore it DENIES summary judgment to both plaintiffs and defendant as to willfulness.

G. Damages

Given the conflicting reports and methodologies of Drs. Lanier and Erath, the Court is unable to decide at summary judgment the exact amount of damages owed. The Court directs the parties to confer regarding whether the question of damages

can be resolved short of trial; it has separately issued a reference to the assigned Magistrate Judge to assist in this process (settlement only).

IV.    CONCLUSION

For the reasons discussed above, partial summary judgment is GRANTED to the plaintiffs on the Off-the-Clock Claim, the Regular Rate Claim, the Straight Time Claim, and as to Liquidated Damages.  Defendant's motion for summary judgment is DENIED.  Triable issues remain as to damages, timeliness, and willfulness.  The Court will set a trial date by separate Order.

SO ORDERED.

Dated:      New York, New York
            March 12, 2018

_____
KATHERINE B. FORREST
United States District Judge